UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN GUZMAN,

        Petitioner,

v.

JEFFERY WOODS,

        Respondent.

_____/

Case No. 08-cv-13767

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**
(docket nos. 1 and 22)**, AND DECLINING TO ISSUE A CERTIFICATE OF**
**APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner John Guzman, who is currently confined at the Chippewa Correctional

Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to

28 U.S.C. § 2254. In his *pro se* application, Guzman challenges his conviction for two

counts of third-degree criminal sexual conduct, M.C.L.A. 750.520d(1)(a) and for being a

second felony habitual offender, M.C.L.A. 769.10. For the reasons stated below, the Court

will deny the application for writ of habeas corpus.

**BACKGROUND**

Guzman was convicted of the above charges following a jury trial in the St. Clair

County Circuit Court. Guzman has provided a detailed statement of facts in his petition for

writ of habeas corpus, in his brief in support of the petition for writ of habeas corpus, in his

amended petition for writ of habeas corpus, and in his reply briefs. Respondent Jeffery

Woods has likewise provided a detailed factual summary of the case, which does not

essentially conflict with Guzman's account of the facts. Because the facts of this case have

been repeated numerous times, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required.  *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

Guzman was convicted of sexually assaulting a thirteen year-old girl in his apartment in Port Huron, Michigan on the night of November 26-27, 2002.  The victim[1] was friends with Salena Antilla, the mother of one of Guzman's children.  The victim testified at trial that Guzman took her into the bedroom of his house and forced her to engage in sexual intercourse with him several times over the course of the night.  The victim testified that while she was being sexually assaulted, three of Guzman's acquaintances were present at the house playing cards, drinking, and listening to music.  The victim did not immediately report the sexual assault to anyone.

Antilla testified that when the victim came home from Guzman's house on the night of the sexual assault, she looked like she had not slept all night and appeared "white." Several months later, the victim informed Antilla that Guzman had sexually assaulted her. Antilla confronted Guzman about the accusation.  Guzman initially denied the accusation, but subsequently told Antilla that he did not know "how it happened."  Antilla, along with the victim's mother, testified that she noticed changes in the victim's behavior after the sexual assault.

Karie Parker was present at Guzman's house on the night in question.  Parker testified that Guzman brought the victim to his house, and that the victim looked young. At some point, Guzman took the victim into his bedroom, where they remained.  Shortly

---

[1]       Because the victim was a minor at the time of the sexual assault, the Court will not refer to her by name in the opinion.

after the sexual assault, Parker began dating Guzman.  After Guzman was charged with the crime, the two began discussing the case.  When Parker told Guzman that she thought the victim was seventeen years-old, Guzman admitted that the victim was only thirteen years-old.  Guzman also admitted to having sex with the victim, but claimed that the sex was consensual.  Parker testified that Guzman later asked her to lie for him, by falsely telling the police that he and the victim had slept on the couch on the night of the assault. Two other friends, Rubin Chavez and Jose Castillo, confirmed Parker's general sequence of the events at Guzman's house on the night in question.

Guzman testified on his own behalf and denied sexually assaulting the victim.  He was convicted and sentenced to 14 ½ to 22 ½ years in prison.  The conviction was affirmed on appeal. *People v. Guzman,* No. 254616 (Mich.Ct. App. September 13, 2005); *lv. den.* 474 Mich. 985 (2005).  Guzman then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. al,* which the trial court denied.  *People v. Guzman,* No. 03-00285-FH (St. Clair County Circuit Court, February 21, 2007).  The Michigan appellate courts subsequently denied Guzman's leave to appeal.  *People v. Guzman,* No. 279829 (Mich.Ct.App. January 11, 2008); *lv. den.* 482 Mich. 892 (2008).

Guzman filed a petition for writ of habeas corpus with this Court on August 28, 2008, in which he seeks relief on the following grounds:

> I. Defendant's Sixth and Fourteenth Amendment rights under the United States Constitution were violated when [Appellate counsel was ineffective on Defendant's "appeal of right"]. U.S. Const. Amends. VI & XIV. As well as, Michigan Constitution 1963, Art. 1, § 20.

> II. Defendant's Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution were violated when [Detective Butts, failed to inform Defendant that he had the right to have a lawyer present while being questioned, when the investigation had become "accusatory"]. U.S. Const.

3

Amends. V, VI, & XIV. As well as Michigan Constitution 1963, Art. 1, § 2, § 17 & § 20.

III. Defendant's Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution were violated when [Detective Butts, failed to inform Defendant that he had the right to remain silent before he made a statement to Detective Butts, when the Defendant was the "only suspect"]. U.S. Const. Amends. V, VI, & XIV. As well as Michigan Constitution 1963, Art. 1, § 2, § 17 & § 20.

IV. Defendant's Sixth and Fourteenth Amendment rights under the United States Constitution were violated when [Trial counsel was ineffective]. U.S. Const. Amends. VI & XIV. As well as, Michigan Constitution 1963, Art. 1, § 20.

V. Defendant's Sixth and Fourteenth Amendment rights under the United States Constitution were violated when [Trial court judge refused, and denied defense trial counsels' proper request for "criminal records of all prosecutions witnesses" needed for purpose of impeachment and biasness, which denied Defendants "due process"; "right to confront"; "right to compulsory process"; "right to effective assistance of counsel"; "right to fair trial"; "equal treatment/protection"]. U.S. Const. Amends. V, VI, & XIV. As well as Michigan Constitution 1963, Art. 1, § 2, § 17 & § 20.

VI. Defendant's Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution were violated by [egregious prosecutorial misconduct]. U.S. Const. Amends. V, VI, & XIV. As well as Michigan Constitution 1963, Art. 1, § 17 & § 20.

VII. Defendant's Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution were violated when [trial court judges' refusal to grant defense counsel a properly requested adjournment/continuance in which to prepare and investigate, as well as, refusing a "second" properly requested adjournment/continuance in which to prepare and investigate prior to trial, ultimately denied Defendant "due process", "right to effective assistance of counsel", "right to fair trial" and "equal treatment/protection"]. U.S. Const. Amends. V, VI, & XIV. As well as Michigan Constitution 1963, Art. 1, § 2, § 17 & § 20.

VIII. Defendant's Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution were violated when [Defendant was denied his right to an impartial jury drawn from a fair cross-section of the community, where there was not "one Hispanic" in the jury array selection, due to the systematic exclusion of "Hispanic residents" from city of Port Huron, and county of St. Clair, Circuit Court Jury Service Residents]. U.S. Const. Amends. V, VI, & XIV. As well as Michigan Constitution 1963, Art. 1, § 2, § 17 & § 20.

4

IX. Defendant's Fifth and Fourteenth Amendment rights under the United States Constitution were violated by [Double jeopardy clauses, where Defendant was charged/convicted/sentenced, twice for the same crime which occurred on the same date, time and place]. U.S. Const. Amends. V & XIV. As well as, Michigan Constitution 1963, Art. 1, § 15.

X. Defendant's Fifth and Fourteenth Amendment rights under the United States Constitution were violated when [the trial court judge rendered/imposed a sentence on the basis of "misinformation of a constitutional magnitude", which was a violation of "due process" and "fair sentencing"]. U.S. Const. Amends. V & XIV. Aswell as, Michigan Constitution 1963, Art. 1, § 17.

On August 18, 2009, this Court granted Mr. Guzman's motion to amend the petition

to add the following three claims:

XI. The Defendant must be granted a new trial when the prosecutor improperly impeached the Defendant over objections of defense counsel when the prosecutor claimed to be refreshing the Defendant's recollection but was clearly impeaching the Defendant, in violation of the Fourteenth Amendment of the United States Constitution.

XII. Defendant's constitutional right to due process of law was violated when the judge imposed an extremely high minimum which penalized the Defendant for exercising his absolute right to a trial.

XIII. The failure of Defendant's trial attorney to object to several errors during the course of trial a "deficient performance" which deprived Defendant of his Sixth and Fourteenth Amendment rights to the effective assistance of counsel.

## LEGAL STANDARD

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

5

court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## ANALYSIS

For the purposes of judicial clarity, the Court will first discuss the claims that Guzman raised on his direct appeal – claims eleven, twelve, and thirteen. The Court will then address the first ten claims raised by Guzman, which were raised for the first time in his post-conviction motion for relief from judgment.

A. Claim #11: Prosecutorial Misconduct

Guzman first contends that the prosecutor committed misconduct by improperly impeaching him with a prior inconsistent statement that he made to the police.

At trial, Guzman testified to a complicated version of events concerning how and why the victim came to be at Guzman's apartment on the night in question. Guzman's testimony was contradicted on this issue by the victim's testimony. Before his arrest, Guzman made a statement to Detective Elaine Butts of the Port Huron Police Department. The police report failed to include Guzman's version of why the victim was at his

6

apartment on the night in question. The prosecutor showed Guzman a copy of Detective Butts' report, purportedly for the purpose of allowing Guzman to refresh his recollection. Guzman denied any lapse in his memory and insisted that he had told Detective Butts how the victim got to his apartment, although Detective Butts contradicted this testimony.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993) (internal citations omitted). On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra*, 4 F.3d at 1355-56 (internal citations and quotation marks omitted). When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.* In evaluating prosecutorial misconduct in a habeas case, consideration should be given "to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury", and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4 F.3d at 1355-56.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state

7

courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 645 (1974)).

The Michigan Court of Appeals rejected Guzman's claim, finding that it was proper for the prosecutor to impeach Guzman with the police report, because the absence of Guzman's version of events from the police report was inconsistent with his testimony at trial that he had told his side of the story to Detective Butts. *Guzman,* Slip. Op. at * 2.

Although Guzman has framed his improper impeachment claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009); *cert. den sub nom Webb v. Bobby*, 130 S. Ct. 2110 (2010). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). Furthermore, it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are "usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000) (internal citation omitted). Guzman's claim that the prosecutor improperly impeached him with prior inconsistent statements is therefore not cognizable in a federal habeas corpus proceeding. *See Roland v. Mintzes,* 554 F.

8

Supp. 881, 890 (E.D. Mich. 1983).

B. Claim # 12:  Vindictive Sentencing

Guzman next contends that he is entitled to resentencing because the trial judge

penalized him for rejecting a plea offer and exercising his right to a trial.  Guzman refers

to comments made by the trial judge at sentencing, where the judge referred to a "very

generous plea offer" that Guzman had rejected on December 9, 2003. [2]  (Tr. 3/8/2004, pp.

18-19).

In rejecting Guzman's vindictive sentencing claim, the Michigan Court of Appeals

noted:

> In this case, the record indicates that the trial court was searching for a reason
> to impose a lower sentence than was recommended in the presentence
> information report (PSIR).  In searching for such a reason, the court noted that
> the plea deal defendant rejected would have assured him of a substantially lower
> sentencing range.  The court went on to note that the defendant was entitled to
> maintain his innocence "and I certainly don't punish a person for that...." We
> conclude that the implication of the reference to the plea deal, when read in
> context, is that the court at first believed that perhaps a sentence within that
> lower sentencing range would have been more proportionate to the crime.
> However, it is apparent that as the court further reviewed the facts of the case,
> including the lack of credibility of defendant's trial testimony, defendant's age and
> that of the complainant, and the nonconsensual nature of the sexual intercourse,
> the court concluded that the sentence recommended in the PSIR was
> appropriate.  The trial court was not punishing defendant for maintaining his
> innocence and insisting on his right to a trial, but was looking for a reason to
> impose a lower sentence than the recommended sentence, and, finding no such
> reason, the court adopted the recommendation.

*Guzman,* Slip. Op. at * 3.

A sentence is unconstitutionally vindictive if it imposes greater punishment because

---

[2]        The plea offer allowed for Guzman to plead guilty to two reduced charges of
attempted third-degree criminal sexual conduct, which carried a five year maximum
sentence.  Guzman's sentencing guidelines range for these crimes was five to twenty three
months. (Tr. 12/9/2003, pp. 3-6).

the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *See Wasman v. United States*, 468 U.S. 559, 568 (1984). However, in *Alabama v. Smith*, 490 U.S. 794, 795 (1989), the Supreme Court held "that no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial." The Court in *Smith* noted that a sentencing judge possesses much more relevant sentencing information after trial than is generally available when a defendant pleads guilty. *Id.* at 801. During a trial, "the judge may gather a fuller appreciation of the nature and extent of the crimes charged" and gain "insights into [the defendant's] moral character and suitability for rehabilitation." *Id.* In addition, "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Id.*

Therefore, it is not reasonable for a reviewing court to presume that a longer sentence imposed after trial was motivated by unconstitutional vindictiveness. Where there is no reasonable likelihood that the sentence is the product of actual vindictiveness on the part of the sentencing authority, the burden is on the defendant to prove actual vindictiveness in the sentencing decision. *Id.* at 799. The mere imposition of a longer sentence than a defendant would have received had he pled guilty does not automatically constitute vindictive or retaliatory punishment. *Williams v. Jones,* 231 F. Supp. 2d 586, 599 (E.D. Mich. 2002). "[T]he Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused." *Id.* (*citing Corbitt v. New Jersey*, 439 U.S. 212 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357 (1978)). Although a defendant is free to accept or reject a plea bargain,

10

once that bargain has been rejected, "the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is presumptive evidence of judicial vindictiveness." *Id.*

Guzman has failed to show that the sentence imposed by the judge in this case was based on a desire to punish Guzman for exercising his constitutional right to a trial. Although the judge mentioned Guzman's rejection of the plea offer at sentencing, the judge mentioned it in the context of explaining why the judge first thought that a sentence within a lower sentencing range would have been more proportionate to the crime. The judge went on to mention the facts of the case, including the lack of credibility of Guzman's trial testimony, the respective ages of Guzman and the victim, and the nonconsensual nature of the sexual intercourse, before concluding that the sentence recommended in the PSIR was appropriate. The trial judge even told Guzman that he was entitled to maintain his innocence and that he was not being punished for that. (Tr. 3/8/2004, pp. 18-22). Under the circumstances, the Michigan Court of Appeals rejection of Guzman's vindictive sentencing claim was a reasonable application of clearly established federal law. *Williams,* 231 F. Supp. 2d at 599. Guzman is not entitled to habeas relief on his claim.


C.  Claim # 13: Ineffective Assistance of Trial Counsel

Guzman next complains that he was deprived of the effective assistance of trial counsel. To establish a violation of the right to effective assistance of counsel, a habeas petitioner must satisfy two components. *See Daly v. Burt,* 613 F. Supp. 2d 916, 944 (E.D. Mich. 2009). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

11

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Second, the defendant must show
that the deficient performance prejudiced the defense.  This requires showing that
counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose
result is reliable."  *Id.*  A habeas petitioner "must show that counsel's representation fell
below an objective standard of reasonableness", in order to demonstrate that counsel's
performance was deficient.  *Id.* at 688.  To demonstrate prejudice, he "must show that
there is a reasonable probability that, but for counsel's unprofessional errors, the result of
the proceeding would have been different."  *Id.* at 694.

Guzman first complains that counsel was ineffective for failing to move for the
exclusion of Detective Butts' police report and for failing to request an instruction to the
jury that his prior inconsistent statement could not be used only as impeachment evidence
and not as substantive evidence of guilt.

In rejecting this claim, the Michigan Court of Appeals noted that they had previously
concluded that it was proper under Michigan law to impeach Guzman with the police
report.  Counsel was therefore not ineffective for failing to obtain exclusion of the evidence.
*Guzman,* Slip. Op. at * 3-4.  The Michigan Court of Appeals further ruled that Guzman had
failed to show that there was a reasonable probability that, but for the lack of a limiting
instruction, the result of the proceedings would have been different.  *Id.*

Federal habeas courts "'must defer to a state court's interpretation of its own rules of
evidence and procedure' when assessing a habeas petition."  *Miskel v. Karnes*, 397 F.3d
446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).
Because the Michigan Court of Appeals determined that it was proper under Michigan law

12

to impeach Guzman with the contents of the police report, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F. Supp. 2d 704, 721 (E.D. Mich. 2003). Trial counsel was not deficient for failing to obtain the exclusion of Detective Butts' police report, where Michigan case law did not forbid the prosecution from using the report to impeach Guzman's credibility. S*ee Gaither v. Birkett*, No. 04-cv-74158-DT, 2006 WL 1547636, *4 (E.D. Mich. May 31, 2006).

Guzman is also unable to show that he was prejudiced by counsel's failure to seek a limiting instruction on the use of his prior inconsistent statement. Even on direct appeal of federal convictions, the Sixth Circuit has found a trial court's failure to instruct a jury on limitations on the use of prior inconsistent statements plainly erroneous "specifically only where 'the testimony brought out during the impeachment process established in large measure the substantive elements of the crime which the government was required to prove.'" *U.S. v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000) (quoting *United States v. Lipscomb*, 425 F. 2d 226, 227 (6th Cir. 1970)). In the present case, there is no indication that Guzman's prior inconsistent statement to Detective Butts was used to establish the substantive elements of the crimes for which he was convicted. Therefore, the Michigan Court of Appeals' rejection of petitioner's ineffective assistance claim, arising from trial counsel's failure to proffer a limiting instruction on the proper use of prior inconsistent statements, was not an unreasonable application of *Strickland. See Cyars v. Hofbauer,* 383 F. 3d 485, 491-93 (6th Cir. 2004).

In a related claim, Guzman claims that counsel was ineffective for failing to move to suppress his statements to Detective Butts, on the ground that he had never been read

his *Miranda* rights. [3] Detective Butts testified at trial that she never advised Guzman of his *Miranda* rights, but indicated that Guzman was not under arrest at the time that she spoke with him and insisted that he was free to leave. Guzman now claims that Detective Butts locked the door to the interrogation room every time that she left the room, which lead him to believe that he was not free to leave. Guzman argues that because he was subjected to custodial interrogation, he should have been read his *Miranda* rights. Guzman argues that counsel was ineffective for failing to move for the suppression of his statement to the police on this basis.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Statements that are inadmissible because of the government's failure to provide *Miranda* warnings may be used for impeachment purposes, however, to attack the credibility of a defendant's trial testimony. *Harris v. New York*, 401 U.S. 222, 225-26 (1971); *See also Missouri v. Seibert,* 542 U.S. 600, 619 (2004).

In the present case, the prosecution did not use Guzman's statement to the police as

---

[3]    The Michigan Court of Appeals did not address this portion of Guzman's ineffective assistance of counsel claim in their opinion. A review of Guzman's supplemental Rule 11 brief that he raised on direct appeal shows that Guzman raised this claim on his appeal of right. The fact that a state court does not address the merits of a claim does not preclude a finding of exhaustion. *Rudolph v. Parke*, 856 F.2d 738, 739 (6th Cir. 1988). Whether an exhaustion requirement has been satisfied cannot turn upon whether a state court chooses to ignore in its opinion a federal constitutional claim squarely raised in a habeas petitioner's brief in state court. *Dye v. Hofbauer,* 546 U.S. 1, 3-4 (2005); *Smith v. Digmon*, 434 U.S. 332, 333 (1978).

14

substantive evidence, but used only a portion of it to impeach his trial testimony. Guzman, in fact, did not confess to sexually assaulting the victim, claiming that he never slept in the room with the victim that night. (Tr. 2/11/2004, p. 325). The prosecutor only used Guzman's statement to the police to impeach his trial testimony that he had told Detective Butts his version of how the victim had come to be at his house that night. In light of the fact that Guzman's statement to the police was used only for impeachment, there was no reasonable probability that a motion to suppress based on an alleged *Miranda* violation would have succeeded in this case. Guzman was therefore not denied effective assistance by his trial counsel's failure to move for the suppression of his statement on this basis. *See Koras v. Robinson,* 123 Fed. Appx. 207, 12 (6th Cir. 2005) ("In order for us to find a reasonable probability that the outcome of the trial was altered by counsel's performance, we must first conclude there was a reasonable probability that a motion to suppress ... would have been successful.").

Guzman next claims that his counsel was ineffective for failing to properly cross-examine the witnesses and for failing to emphasize the inconsistencies in the prosecution witnesses' testimony. In rejecting this claim, the Michigan Court of Appeals ruled that "the inconsistencies and alleged credibility problems in the stories that the prosecution witnesses gave were the focus of defendant's trial counsel's closing statement." *Guzman,* Slip. Op. at * 4.

A review of the trial record shows that defense counsel vigorously impeached the witnesses, and brought out inconsistencies in their stories and problems with their credibility. Counsel elicited testimony from Parker that she had previously met with counsel and had informed him that Guzman had slept on the couch on the night of the

incident.  Parker also admitted that she had initially told this to Detective Butts before changing her story.  Parker admitted that she had dated Guzman but had since broken up with him.  Parker acknowledged that when she went into Guzman's bedroom on the night of the sexual assault, the victim handed her a pillow but did not scream or ask for help. Counsel also obtained an admission from Parker that she did not break up with Guzman even though she claimed that she felt disgusted after he had told her that he had engaged in sex with a thirteen year-old girl.  (Tr. 2/10/2004, pp. 167-180).

Further, Rubin Chavez admitted on cross-examination that he did not see the victim doing any housework at Guzman's apartment on the night in question.  *Id.* at 193.  This contradicted the victim's testimony.  And counsel obtained admissions from Jose Castillo that he did not know if anything happened in the bedroom on the night of the assault, that he did not hear any screams that night, and that he had not been told that anyone had been raped.  Castillo, like Chavez, did not see the victim doing any housework, nor did he see her appear upset or ask for help.  (Tr. 2/11/2004, pp. 211-17).

Counsel obtained admissions from Antilla that she had falsely told Guzman on several occasions that he was not the father of their child.   Antilla also admitted that on the night of the alleged sexual assault, she had been out at the bar drinking beer and was unsure when she received a telephone call from Guzman.   Antilla further admitted that she and the victim continued to have contact with Guzman after the sexual assault had taken place.  Antilla admitted that after Guzman told her about the assault, there had been an ongoing struggle to keep him out of their child's life, and that Guzman had not seen their child for 8 months prior to trial.  *Id.* at 233-247, 250-52.

Counsel questioned the victim extensively.  The victim insisted that she went to

16

Guzman's house to clean it.  The victim admitted that she had spent the night at Guzman's house before.  Counsel confronted the victim with her preliminary examination testimony, where she testified that she had screamed at the time of the assault, as contrasted with her trial testimony, where she indicated that she did not scream.  The victim admitted that she did not ask for help when Parker came into Guzman's room to grab a pillow, although she claimed that Guzman was still holding her down at the time.  Further, although the victim claimed that Guzman held her down with both hands for the entire time that he sexually assaulted her, she could not explain to counsel how Guzman was able to remove his pants while using both hands to hold her down.  Finally, the victim admitted that she did not tell Antilla about the sexual assault at the time that it happened, only informing Antilla of the assault several months later, and that she continued going over to Guzman's house after the assault, sometimes with Antilla and sometimes by herself.  *Id.* at 306-17; 318-19.

Counsel obtained an admission from Detective Butts that she did not include Guzman's statement to Antilla that "it just happened" in her supplemental police report, choosing instead to tell the prosecutor about this once she had been informed of the comments by Antilla.  *Id.* at 333.

Finally, counsel brought out the various inconsistencies in the witnesses' testimony and between their testimony in his closing argument, as well as discussing at length the credibility problems with these witnesses.  Counsel also pointed to the lack of physical evidence to corroborate the victim's story.  (Tr. 2/12/2004, pp. 396-410).

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."  *Dell v. Straub,* 194 F. Supp. 2d 629,

17

651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Guzman contends throughout his voluminous pleadings that there is additional evidence which should have been used to impeach the credibility of the witnesses. As discussed above, counsel adequately impeached the credibility of the victim and the witnesses, as well as eliciting a motive on Antilla's and Parker's part for fabricating these allegations against petitioner. Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at trial.*" Davis v. Booker,* 589 F.3d 302, 309 (6th Cir. 2009) (quoting *Brown v. Smith*, 551 F.3d 424, 433-34 (6th Cir. 2008)). Because the witnesses' credibility had already been impeached, Guzman was not prejudiced by counsel's failure to impeach the witnesses with cumulative impeachment evidence. *Id.*

In the present case, defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses, and emphasized, in his closing argument, the inconsistencies and weaknesses in the testimony of the various witnesses, as well as their possible motivations for fabricating these charges against Guzman. *See Krist v. Foltz,* 804 F.2d 944, 948-49 (6th Cir. 1986); *Millender v. Adams,* 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002). Guzman is not entitled to habeas relief on his thirteenth claim.

D.  Respondent Contends Guzman Has Procedurally Defaulted Claims 1 - 10.

Respondent contends that Guzman's remaining claims, numbers one through ten, are procedurally defaulted because Guzman raised these claims for the first time in his post-

conviction motion, and he failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3). M.C.R. 6.508(D)(3) provides that a court may not grant relief to a defendant, if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review" however, "unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the Michigan Court of Appeals and the Michigan Supreme Court rejected the petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention Guzman's failure to raise these claims on his direct appeal as their rationale for rejecting his claim.

19

"Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained." *Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Guzman's claims. *Id.*

The trial court, in denying the motion for relief from judgment, indicated that because Guzman had "failed to satisfy the 'good cause' and 'actual prejudice' requirements of MCR 6.408(D)(3)", the motion would be denied. *People v. Guzman,* No. 03-002285-FH, * 1 (St. Clair County Circuit Court, February 21, 2007). After reviewing Guzman's claims and concluding that they lacked merit, the trial court concluded that "it plainly appears from the face of these materials that he is not entitled to relief, having failed to meet the 'good cause' and 'actual prejudice' requirements of MCR 6.508(D)(3)." *Id.* at p. 3.

The St. Clair County Circuit Court, the last court to issue a reasoned opinion on Guzman's post-conviction motion, denied petitioner's motion, twice finding that he had failed to establish good cause or actual prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise these claims in his appeal of right. The Michigan appellate courts denied petitioner leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Pursuant to *Ylst,* this Court must presume that the unexplained orders of the Michigan appellate courts rejected Guzman's post-conviction claims on the same ground that the St. Clair County Circuit Court did in rejecting the claims. Under the circumstances, the Michigan courts clearly invoked the provisions of M.C.R. 6.508(D)(3) to procedurally bar Guzman's claims. *See e.g. Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005).

20

Guzman argues that his claims are not procedurally defaulted, because the trial court, in rejecting his ineffective assistance of appellate counsel claim, indicated that "most of the claims are essentially the same as those previously raised on appeal, namely, the claim of ineffective assistance of trial counsel and scoring of guidelines in the PSIR." *People v. Guzman,* No. 03-002285-FH, at * 2.

The trial court's language does not preclude a finding that Guzman's claims are defaulted pursuant to M.C.R. 6.508(D)(3). Although the trial court indicated that "most" of the claims raised by Guzman in his post-conviction motion were "essentially the same as those previously raised on appeal", he did not find that the claims were identical. Further, although Guzman raised several ineffective assistance of counsel claims on his direct appeal, these were different than the claims that he raised for the first time in his post-conviction motion for relief from judgment, which are currently included in his first and fourth claims. Because the ineffective assistance of counsel claims raised by Guzman in his first and fourth claims are different than the ineffective assistance of counsel claims presented during petitioner's direct appeals process, these claims were not fairly presented to the state courts as part of the direct appeal process. *See Caver v. Straub,* 349 F.3d 340, 346-47 (6th Cir. 2003) (quoting *Pillette v. Foltz,* 824 F. 2d 494, 497 (6th Cir. 1987)) ("Fair presentation also requires that 'the same claim under the same theory be presented' for the state court's consideration.").

Moreover, although Guzman raised the prosecutorial misconduct claim that makes up his eleventh claim on his direct appeal, he did not raise any of the prosecutorial misconduct claims that are part of his sixth claim. Because the prosecutorial misconduct claims raised in his sixth claim are based on a different theory than the prosecutorial

21

misconduct claim which was raised in the Michigan Court of Appeals on his direct appeal, these prosecutorial misconduct claims were not fairly presented to the state courts on direct review. *See e.g. Taylor v. Mitchell,* 296 F. Supp. 2d 784, 815 (N.D. Ohio 2003).

Further, although Guzman raised a claim on appeal that his counsel was ineffective for failing to move to suppress his statement to Detective Butts because he had not been given his *Miranda* warnings, Guzman never raised any independent claim on direct appeal that his statement was inadmissible because he had not been given his *Miranda* warnings. For purposes of the exhaustion requirement, an ineffective assistance of counsel claim is legally distinct from the underlying substantive claim incorporated into the ineffective assistance of counsel claim. *See White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005). Finally, nothing even remotely resembling Guzman's fifth or seventh through tenth claims was raised on his direct appeal.

More importantly, Guzman indicated in his post-conviction motion and subsequent appeals that none of these claims had been raised on his direct appeal and argued that appellate counsel's failure to raise these claims on direct appeal excused the default. Significantly, Guzman has consistently acknowledged in his various pleadings before this Court that his first through tenth claims were raised for the first time in his post-conviction motion for relief from judgment.

In light of the fact that Guzman conceded in his habeas petition that his first through tenth claims had not been raised before the Michigan appellate courts on direct review, as well as the fact that petitioner acknowledged before the Michigan courts in his post-conviction pleadings that these claims had not previously been raised before on direct review,  any comments by the trial court that some of these claims had already been

22

raised on direct review would not prevent this Court from procedurally defaulting Guzman's claims based on his failure to comply with the provisions of M.C.R. 6.508(D)(3). *See e.g. Hicks v. Straub,* 377 F.3d 538, 552, n. 14 (6th Cir. 2004).   Guzman's claims are procedurally defaulted. [4]

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).   In extraordinary cases where a constitutional error has probably resulted in the conviction of one who is actually innocent, however, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default.  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Moreover, actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

---

[4]        Of course, to the extent that some of Guzman's post-conviction claims were a reiteration of the claims that he had already raised on his direct appeal, these claims have not been procedurally defaulted but have been addressed on the merits by this Court.

Guzman alleges that appellate counsel's ineffectiveness in failing to raise petitioner's second through tenth claims in his appeal of right constitutes adequate cause to excuse his procedural default.   Guzman, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 754 (1983).  The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.  Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments - those that, in the words of the great advocate John W. Davis, 'go for the jugular,' - in a verbal mound made up of strong and weak contentions."  *Id.* at 753 (internal citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome."  *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002) (internal quotations omitted).   Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," an issue obvious from the trial record which would have resulted in a reversal on appeal.  *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (internal citations omitted).

24

Guzman has failed to show that, by omitting the claims presented in his post-conviction motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel filed a twenty-nine page brief which raised two claims and one sub-claim on direct appeal.[5] Guzman also filed a supplemental Rule 11 brief, most likely with the assistance of appellate counsel, which raised four additional ineffective assistance of counsel claims, and also provided additional case authority for the prosecutorial misconduct claim that Guzman raised on his direct appeal. Guzman has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable so as to amount to cause that would excuse any default. *See Grant v. Rivers,* 920 F. Supp. 769, 782 (E.D. Mich. 1996). Moreover, because the defaulted claims are not "dead bang winners", Guzman has failed to establish cause for his procedural default of failing to raise all of his claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000). Because Guzman has failed to show cause, the Court need not address the issue of prejudice. *See Smith,* 477 U.S. at 533.

Additionally, Guzman has not established that a fundamental miscarriage of justice has occurred. Guzman claims that he has newly discovered evidence that would establish his actual innocence and, therefore, excuse his procedural default. In support of his contention, Guzman has filed a motion requesting an evidentiary hearing regarding newly discovered evidence of actual innocence. Docket no. 8. Guzman attached three affidavits

---

[5] As part of the improper impeachment claim, appellate counsel raised a sub-claim that the trial court erred in failing to give the jurors a cautionary instruction that Guzman's prior inconsistent statements could not be used for substantive evidence.

from his relatives, Tara Guzman, Rosemary Guzman, and Juan Guzman, Jr., to the motion. These affidavits were signed in March of 2007. In these affidavits, Tara and Juan Guzman, Jr. claim that Antilla told them on February 9, 2005 that she had solicited the victim to commit perjury against Guzman at his trial. Rosemary Guzman claims that Antilla made similar admissions to her in May of 2005. Guzman does not have an affidavit from Antilla herself.

In determining whether a habeas petitioner has satisfied the miscarriage of justice standard, a federal court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup,* 513 U.S. at 332.

There are several problems with Guzman's evidence. First, Antilla's alleged admissions to the Guzmans are hearsay and are, therefore, of limited credibility. *See Herrera v. Collins,* 506 U.S. 390, 417 (1993) (finding hearsay statements insufficient to support freestanding habeas claim of actual innocence); *See also Cress v. Palmer,* 484 F. 3d 844, 855 (6th Cir. 2007) (rejecting actual innocence claim that was based in part on an unsworn statement from a recanting witness). Secondly, the affiants are all relatives of Guzman's, which calls into question the reliability of the evidence. Moreover, to the extent that Antilla recanted her trial testimony, this Court notes that recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F. 2d 1253, 1264 (6th Cir. 1991); *See also Byrd v. Collins,* 209 F. 3d 486, 508, n. 16 (6th Cir. 2000). Finally, neither Guzman nor his relatives offer any reasons why they waited two years after Antilla allegedly confessed to committing perjury before signing these affidavits. Because Guzman's relatives waited two years after Antilla allegedly recanted her trial

26

testimony to sign these affidavits, the Court concludes that this evidence is insufficiently reliable to establish Guzman's innocence, so as to excuse his default. *See Lewis v. Smith,* 100 Fed. Appx 351, 355 (6th Cir. 2004) (finding it was proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial); *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010) (holding that long-delayed affidavit of accomplice recanting statement to police did not establish petitioner's actual innocence where it was made almost two years after petitioner's trial).

Finally, the Court is aware that Guzman could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette,* 624 F. 3d at 291. For the reasons that follow, however, habeas relief is not warranted on such a claim.

The Court has already concluded that Guzman has failed to show that appellate counsel was deficient in failing to raise petitioner's second through tenth claims on appeal. Moreover, Guzman is unable to show that he was prejudiced by appellate counsel's failure to raise the claims, in light of the fact that the same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson v. Warren,* 344 F. Supp. 2d 1801, 1096 (E.D. Mich. 2004); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000). The state courts' rulings on Guzman's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise these claims on the appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1st Cir. 1987)). There is no point in remanding this case to the state courts to reconsider

27

a case that they have already adversely decided. *Gardner*, 817 F. 2d at 189.

### Certificate of Appealability.

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability (COA). 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

After conducting the required inquiry, and for the reasons stated in the order above,

28

the Court finds that Guzman has not made a substantial showing of the denial of a constitutional right with respect to his claim.   *See* 28 U.S.C. § 2253(c)(2).   Petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous.   The Court will therefore deny a certificate of appealability.   *See Long v. Stovall,* 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006).   The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous.   *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## ORDER

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus and the amended petition for writ of habeas corpus (docket nos. 1 and 22) are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner will be **DENIED** leave to appeal *in forma pauperis.*

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 13, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 13, 2011, by electronic and/or ordinary mail.

Alissa Greer
Case Manager

29